IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| Plaintiff, | **8:11CR320** |
| vs. | |
| ANDREW J. FAULHABER, | **MEMORANDUM AND ORDER** |
| Defendant. | |

This matter is before the court for sentencing.  This memorandum opinion supplements findings made on the record at a sentencing hearing on June 21, 2012.

I.  BACKGROUND

    A.  Facts

The defendant was charged with possession and receipt and distribution of child pornography.  He entered a plea of guilty to Count II of the Indictment, the possession charge, and the United States ("the government") agreed to dismiss the receipt and distribution charge.  Filing No. 28, Plea Agreement.  The statutory range of imprisonment is up to ten years.  18 U.S.C. § 2252(a)(4)(B).  The court accepted Faulhaber's plea of guilty but deferred acceptance of the plea agreement pending the preparation of a Presentence Investigation Report (hereinafter, "PSR") by the United States Office of Probation (hereinafter, "the Probation Office") that calculated Faulhaber's sentence under the United States Sentencing Guidelines ("the Guidelines").  Filing No. 25, Minute Entry.

In the PSR, the Probation Office based its outline of the offense conduct on the prosecutor's version of events.  Filing No. 39,  Revised PSR (sealed) at 5-6.  On April

19, 2011, investigators with the Omaha Cyber Crimes Task Force served a search warrant seeking evidence of child pornography on a residence in Blair, Nebraska.  A computer in the residence had been identified in February 2011 offering to share child pornography.  Investigators observed that the computer at this address had been identified possessing and advertising 320 images and videos of child pornography prior to execution of the warrant.  A forensic review of the seized computer revealed 55 images and 1 video of child pornography.  *Id.* at 6.  Most of the child pornography depicted 9 to 11-year-old girls, and there were images that depicted the adult penetration of a prepubescent minor.  *Id.*  Additionally, approximately 25% of the child pornography depicted bondage and torture.  *Id.*  In addition to the child pornography, the defendant had a small collection of bestiality pornography.  *Id.*  Under the Guidelines, the defendant is accountable for 130 images of child pornography (75 images/video x 1 video = 75 images + 55 images = 130 images of child pornography).

The Probation Office determined that the defendant's base offense level was 18 under U.S.S.G. § 2G2.2(b)(1).  *Id.* at 7.  It found the following upward adjustments were applicable:  a two-level increase under U.S.S.G. § 2G2.2(b)(2) (for possession of material containing a prepubescent minor); a five-level increase under U.S.S.G. § 2G2.2(b)(3)(B) (for an offense involving distribution for the receipt, or expectation of receipt, of a thing of value, but not for pecuniary gain); a four-level increase under U.S.S.G. § 2G2.2(b)(4) (for material that portrays sadistic or masochistic conduct or other images of violence); a two-level increase under U.S.S.G. § 2G2.2(b)(6) (for use of a computer); and a two-level increase under U.S.S.G. § 2G2.2(b)(7) (for possession of between 10 and 150 images).  *Id.* at 7-8.  The application of these enhancements

results in an adjusted offense level of 33.  *Id.* at 8.  After subtracting three levels for acceptance of responsibility under U.S.S.G. § 3E1.1, Faulhaber's total offense level under the Guidelines is 30.  *Id.*

The Probation Office assessed no criminal history points because the defendant had only a minor traffic violation and a juvenile adjudication for recklessly causing bodily injury to a classmate.  *Id.* at 8.  At offense level 30 and criminal history category I, Faulhaber's range of imprisonment under the Guidelines would be 97 to 121 months, but the Guidelines sentence is capped at the statutory maximum of ten years, so the guideline imprisonment range is 97 to 120 months.  U.S.S.G. § 5G1.1(c)(1).

The government had no objections to the findings in the PSR.  Filing No. 29.  The defendant objected to the five-level enhancement imposed under to U.S.S.G. § 2G2.2(b)(3)(B), arguing that it does not apply because the defendant did not distribute the images either for something of value or with expectation of receiving something of value.  Filing No. 34, Objection.  He also objected to the two-level enhancement for use of a computer, contending that it results in additional and unnecessary penalties.  *Id.* He argued that his total offense level should be 23 and his sentencing range should be 46 to 57 months.  *Id.*  He also moved for a variance under 18 U.S.C. § 3553(a).  Filing No. 31 (sealed).  In connection with his motion for a variance, he argued for a sentence of probation.  Filing No. 32, Brief (sealed) at 8-9.

Faulhaber is 23 years old.  Filing No. 39,  Revised PSR at 9.  He has a high school education and two years of college.  *Id.* at 10.  He lives at home with his parents. *Id.*  He was engaged prior to his arrest, but the engagement ended as a result of this prosecution.   *Id.*   He has consistently been employed as a customer service

representative, data entry operator and sales representative.  *Id.* at 13.  The record shows he was bullied as a child.  *Id.* at 10-11.  He was diagnosed with depression, anxiety and attention deficit disorder in elementary school.  *Id.* at 10.  He has had intermittent counseling and treatment since then.  *Id.*

A psychological evaluation was performed on the defendant.  *Id.* at 11.  The defendant was diagnosed with depressive disorder and a risk assessment indicated that his risk of sex offense recidivism is in the moderate-low range.  *Id.*  The evaluation showed that the defendant's likelihood of escalating his behavior from a non-contact offense to a contact offense is low.  *Id.* at 11-12.  The evaluation recommended that the defendant complete a course of cognitive behavioral therapy in both individual and group milieus with clinicians trained in the assessment and treatment of adult sex offenders and continue to take medication to treat his depression.  *Id.* at 12.

B.   LAW

1.  Sentencing

Because the Sentencing Guidelines are no longer mandatory, the range of choice in sentencing dictated by the facts of the case has been significantly broadened. *See United States v. Booker, 543 U.S. 220, 260-61 (2005); Gall v. United States, 552 U.S. 38, 59 (2007); Kimbrough v. United States, 552 U.S. 85, 101 (2007); Rita v. United States, 551 U.S. 338, 349-50 (2007); Cunningham v. California, 549 U.S. 270, 286-87 (2007).*  District courts must "give respectful consideration to the Guidelines," but are permitted "'to tailor the sentence in light of other statutory concerns as well.'" *Kimbrough, 552 U.S. at 101* (quoting *Booker, 543 U.S. at 245-246*).

4

In imposing a sentence, the district court must consider the factors set out in the Sentencing Reform Act at 18 U.S.C. § 3553(a), including the nature of the offense, history and characteristics of the defendant, the need to deter criminal conduct, and the need to protect the public from further crimes by the defendant. *See, e.g., Gall*, 552 U.S. at 41, 49-50 & n.6; *Booker*, 543 U.S. at 259-60; *Nelson v. United States*, 555 U.S. 350, 351-52 (2009) (per curiam). That statute "contains an overarching provision instructing district courts to 'impose a sentence sufficient, but not greater than necessary' to accomplish the goals of sentencing." *Kimbrough*, 552 U.S. at 101 (quoting 18 U.S.C. § 3553(a)). The sentencing court must first calculate the Guidelines range, and then consider what sentence is appropriate for the individual defendant in light of the statutory sentencing factors explaining any variance from the former with reference to the latter. *Nelson*, 55 U.S. at 351. A sentencing court may not presume that a sentence within the applicable Guidelines range is reasonable. *Id.*

In determining a sentence, the court can consider whether the guideline at issue exemplifies the Sentencing Commission's "exercise of its characteristic institutional role" which is "to formulate and constantly refine national sentencing standards, basing its determinations on empirical data and national experience, guided by a professional staff with appropriate expertise." *Kimbrough*, 552 U.S. at 108-09; *Rita*, 551 U.S. at 349-50. In formulating most Guidelines, the Commission developed and used data on past practices and recidivism to establish offense levels for each crime, linked to a recommended imprisonment range, based on these sentencing statistics. *See* United States Sentencing Commission, Fifteen Years of Guidelines Sentencing:   An Assessment of How Well the Federal Criminal Justice System is Achieving the Goals of

Sentencing Reform 14, 72-73 (November 2004), available at http:// www.ussc.gov/ 15_ year/ 15_ year_ study_ full.pdf ("Fifteen-Year Assessment") (last visited July 30, 2012); U.S.S.G. § 1A.1, intro. comment., pt. A, ¶ 3; *Kimbrough*, 552 U.S. at 96; *Gall*, 552 U.S. at 46 (noting that the Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions").  When Guidelines are not the result of the Commission's exercise of its characteristic institutional role, such as when they are not based on any identified empirical approach, but are instead keyed to or guided by statutory directives, a court is not presented with the "ordinary case," in which "the Commission's recommendation of a sentencing range will 'reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives'" and it is "not an abuse of discretion for a district court to conclude when sentencing a particular defendant" that application of the guideline "yields a sentence 'greater than necessary' to achieve § 3553(a)'s purposes even in a mine-run case." *Kimbrough*, 552 U.S. at 109-110 (quoting *Rita*, 551 U.S. at 350); *see also Gall, 552 U.S. at 46 n.2* (noting that not all Guidelines are tied to empirical evidence).

Both for policy reasons and because Congress had enacted mandatory minimum sentences, the Commission departed from past practices in setting offense levels for child abuse crimes and sexual offenses.  Fifteen-Year Assessment at 15, 72-73; United States Sentencing Commission, The History of the Child Pornography Guidelines 44-48 (October 2009), available at http://www.ussc.gov/Publications/Offense_Types/index.cfm ("Child Porn. History Rep't") (discussing the Commission's approach to setting a base offense level that corresponds to a mandatory minimum sentence) (last visited July 30,

2011); Troy Stabenow, Deconstructing the Myth of Careful Study: A Primer on the Flawed Progression of the Child Pornography Guidelines (July 3, 2008), *available at* http://www.fd.org/odstb_search?query=primer (unpublished comment, last visited July 30, 2012).  The Guidelines for child exploitation offenses were not developed under the statistical approach, but were promulgated, for the most part, in response to statutory directives.  Child Porn. History Rep't at 6 (stating "Congress has specifically expressed an intent to raise penalties associated with certain child pornography offenses several times through directives to the Commission and statutory changes aimed at increasing the guideline penalties and reducing the incidence of downward departures for such offenses" and noting that "[the Commission] must bow to the specific directives of Congress"); *see, e.g.*, U.S.S.G. App. C, Vol. I, Amends. 435 & 436 (Nov. 27 1991), 537 & 538 (Nov. 1, 1996); Vol. II, amends. 592 (Nov. 1, 2000), 615 (Nov. 1, 2001), 649 (April 30, 2003); Supp. Vol., amends. 651 (Oct. 27, 2003), 664 (Nov. 1, 2004); United States Sentencing Commission, Report to Congress: Sex Offenses Against Children, Findings and Recommendations Regarding Federal Penalties (June 1996), available at http://www.ussc.gov/Publications/Reports_to_Congress/index.cfm (last visited July 30, 2012).

Over the years, Congress has passed numerous laws of increasing severity that regulate child pornography and exploitation of children.  *See, e.g.,* The Protection of Children Against Sexual Exploitation Act of 1977, *codified as amended at* 18 U.S.C. §§ 2251-2253; the Child Protection Act of 1984, *codified as amended at* 18 U.S.C. § 2253; the Child Protection and Obscenity Enforcement Act of 1988, codified as amended at 18 U.S.C. §§ 2251 & 2252(a); the Sex Crimes Against Children Act of 1995, *codified as*

amended at 18 U.S.C. §§ 2251 & 2252; the Child Pornography Prevention Act of 1996, codified as amended at 18 U.S.C. § 2251 (extending the prohibition against child pornography to sexually explicit images that appear to depict minors but were produced without using any real children), invalidated as unconstitutional in Ashcroft v. Free Speech Coal., 535 U.S. 234 (2002), & § 2252A; the Protection of Children from Sexual Predators Act of 1998, codified as amended at 18 U.S.C. § 2426; the Prosecutorial Remedies and Other Tools to End the Exploitation of Children Today Act of 2003 ("PROTECT Act"), codified as amended at 18 U.S.C. § 2252B; the PROTECT Our Children Act, Pub. L. No. 110–401, § 304 (2008).

The amendments and recommendations had the goal of "ensur[ing] lengthy incarceration of repeat sex offenders who show the greatest risk of victimizing children." Sex Offenses Rep't, Executive Summary at i.   The Sentencing Commission acknowledged in its report, however, that federal prosecutions for child sex offenses represented a small percentage of the total number of such cases nationwide, because the vast majority of sex offenses were prosecuted in state court. Id.  Noting that "[p]enalties for sex offenses against children have been increased in recent years and are quite severe," the commission nonetheless found amendments appropriate "to increase sentences for the most dangerous offenders." Id.

The text and structure of the criminal child pornography statutes prohibit conduct across a spectrum of activity ranging from merely possessing child pornography to "mailing, transporting or shipping child pornography" to "knowingly receiving or distributing child pornography" to "knowingly reproducing, advertising, promoting, presenting or distributing" child pornography to "knowingly selling or possessing with

intent to sell" child pornography.  18 U.S.C. § 2252A(a)(1)-(4).  The clear focus of this legislation and concomitant Guidelines revision is on the patent evils of child pornography and the new dimension that computer technology adds to those evils.  *See* Child Pornography Prevention Act of 1996, Omnibus Consolidated Appropriations Act, Pub. L. No. 104-208, § 121, 1996 H.R. 3610, 104th Cong., 110 Stat. 3009, 3009-26 (1996); *see also* notes following 18 U.S.C.A. § 2251; Child Porn. History Rep't at 30-31. In particular, amendments to the Guidelines reflect Congressional concerns that "pedophiles, including those who use the Internet, are using child pornographic and obscene material to desensitize children to sexual activity, to convince children that sexual activity involving children is normal, and to entice children to engage in sexual activity." U.S.S.G. App. C., Vol. 2, amend. 592 (Nov. 1, 2000); Child Porn. History Rep't at 30-31.  In drafting the Guidelines, the Commission was also interested in "how best to identify those offenders at the greatest risk of recidivism."  Child Porn. History Rep't at 37.  The primary victims of the crime of possession of pornography are the exploited children.  *See United States v. Rugh*, 968 F.2d 750, 756 (8th Cir. 1992).

The Commission reports that its efforts to ensure proportionality between the child pornography trafficking, receipt, and possession offenses with other crimes such as first degree murder, second degree murder, assault with intent to murder, conspiracy to commit murder, rape, production of pornography, voluntary manslaughter, kidnapping, and travel to engage in a sex act, have resulted in median sentences in fiscal year 2008 "of 78 months for offenders sentenced at § 2G2.2 [for possessing and trafficking in material involving sexual exploitation of a minor]; 108 months for offenders who traveled to engage in a prohibited sexual conduct with a minor sentenced at

§ 2G1.3(a); 139 months for criminal sexual abuse offenders sentenced at § 2A3.1(a); and 240 months for production of child pornography offenders sentenced at § 2G2.1." Child Porn. History Rep't at 47 n.219, 48 n.224.   The Commission also notes that "[s]entencing courts have also expressed comment on the perceived severity of the child pornography guidelines through increased below-guidelines variance and downward departure rates."  *Id.* at 54.

    II.   DISCUSSION

        A.   Guideline Calculation

    The court overrules the defendant's objections to the PSR.   Utilizing a peer-to-peer network is exchanging images for a thing of value.  *United States v. Burman*, 666 F.3d 1113, 1118-19 (8th Cir. 2012).   Also, the Eighth Circuit Court of Appeals has approved a two-level enhancement for use of a computer.  *United States v. Koch*, 625 F.3d 470, 480 (8th Cir. 2010).   The court adopts the findings in the PSR.   Faulhaber's base offense level under the Guidelines is 18.  *See* U.S.S.G. § 2G2.2(a)(1).   The court finds the following adjustments are applicable:   a two-level increase under U.S.S.G. § 2G2.2(b)(2) for possession of material containing a prepubescent minor; a five-level increase under U.S.S.G. § 2G2.2(b)(3)(B) for an offense involving distribution for the receipt, or expectation of receipt, of a thing of value, but not for pecuniary gain; a four-level increase under U.S.S.G. § 2G2.2(b)(4) for material that portrays sadistic or masochistic conduct or other images of violence; a two-level increase under U.S.S.G. § 2G2.2(b)(6) for use of a computer; and a two-level increase under U.S.S.G. § 2G2.2(b) for possession of between 10 and 150 images.   The court finds a downward adjustment for acceptance of responsibility is warranted.   Faulhaber's resulting offense

level is 30.  At criminal history category I, Faulhaber's recommended sentencing range under the Guidelines is 97 to 120 months.  No departure is warranted.

> B.  Section 3553(a) Factors

Faulhaber's motion for a deviation or variance from the Guidelines is granted. The court finds a sentence outside the Guidelines is warranted in this case.  The court finds that a sentence of incarceration for 12 months and one day followed by a term of supervised release of five years will fulfill the objectives of sentencing set out in Section 3553(a).

With respect to the nature and circumstances of the offense, the court finds that possession and distribution of child pornography are forms of sexual exploitation and are serious offenses.  Sexual exploitation offenses include the production of child pornography and the exploitation of children for the purposes of prostitution or the production of pornography, as well as trafficking in pornography.  Criminalizing the possession of child pornography is a necessary complement to laws banning distribution of such items, and is intended to destroy the market for exploitation of children.  Faulhaber's conduct falls at the low end of the continuum of criminal conduct—from possession to distribution to production to predatory abuse—that exploits children.  A possessor of child pornography is the least culpable in the chain and is a marginal player in the overall child exploitation scheme.

The varying levels of participation and blameworthiness in connection with distribution are meant to be accounted for in the Guidelines' market-oriented scheme. The statutes criminalizing the possession and distribution of child pornography are aimed at the widespread and profit-driven dissemination of child pornography that the

Internet facilitates and fosters.  Although file-sharing arrangements contribute to Internet trafficking in child pornography, there is a qualitative difference between sharing one's computer files and selling child pornography for profit.  Because he is not engaged in a profit-making enterprise, Faulhaber is not in the same class as a large-scale distributor of child pornography; nonetheless, the nature of the images is troubling.  Though his conduct may be attributable to some degree to his depression and lack of maturity, the court finds it is nonetheless necessary to impose a period of incarceration.  The court is also troubled by the fact that the defendant's conduct appeared to be escalating.  However, there has been no showing that Faulhaber possessed child pornography in order to entice a child, had any improper contact with children, photographed minors engaged in sexual conduct, or made attempts to contact a child.  The court finds that because he has been convicted of only possession of child pornography, Faulhaber should be sentenced to a term of imprisonment at the low end of the statutory range.

In making this determination, the court has considered Faulhaber's history and characteristics.  Faulhaber was bullied as a child and is somewhat immature.  Based on the court's review of the record, it appears that Faulhaber's mental status contributed to his actions and must be considered in determining his culpability for his actions.  He has been diagnosed as suffering from a depressive disorder and has been under psychiatric care for many years.  Importantly, psychological testing shows that he is at low risk to reoffend or to commit acts of sexual abuse.

The court has consulted the Guidelines and has used the Guidelines calculation as its initial starting point.  However, the child pornography Guidelines are driven by Congressional directive and are not grounded in any scientific, statistical, or empirical

method.  The advice imparted in the Guidelines does not reflect the sort of empirical data, national experience, and independent expertise that characterize the Sentencing Commission's institutional role.  Given the flaws in the Guidelines' scheme for punishment of Internet child pornography crimes, the court does not accord a high degree of deference to the Guidelines.  The Sentencing Commission diverged significantly from its studied, empirical approach in formulating the Guidelines that apply to Faulhaber's case and the result is a recommended sentence that is greater than necessary to provide just punishment.  Although downloading child pornography is hardly a harmless activity, it is not the equivalent of direct physical abuse or sexual molestation of children, or production of pornography involving children.  The court finds that the ranges of imprisonment recommended under the Guidelines may be appropriate for a sexual predator, but are not a reliable appraisal of a fair sentence in this case.

The Guidelines' sentencing scheme for child pornography crimes illogically skews sentences for "average" defendants to the upper end of the statutory range, regardless of the particular defendant's acceptance of responsibility, criminal history, specific conduct, or degree of culpability, thus blurring distinctions between the least culpable and the worst offenders.  In the context of this and other Internet child pornography crimes that involve peer-to-peer networks, the Guidelines provide little distinction between a low-level distributor and a high-level distributor and no distinction between one who merely possesses and those who "receive and distribute."  In this court's experience, there is essentially no Internet child pornography offender who could end up with a Guidelines-recommended sentence that falls at or close to the low end of

the statutory range.  For this defendant, the low end of the Guidelines-recommended sentence (over eight years) is close to the top of the statutory range of ten years for possession and the high end of the Guidelines-recommended range exceeds the statutory maximum.

With the base offense level for possession established as 18, and a two-point enhancement for use of a computer that is applied in every Internet child pornography case, only an offender who possessed fewer than ten images that did not contain any of the images of prepubescent minors or sadistic or masochistic acts that are widely prevalent in child pornography could receive a sentence at the low end of the statutory range.  Because of the nature of peer-to-peer file sharing programs, a simple possessory crime evolves into a distribution offense as soon as someone accesses a shared file.  In virtually every child pornography prosecution, the application of numerous and severe enhancements results in a Guidelines sentencing range whose low end is close to the statutory maximum.  In this case, as in most, a fairly typical offender with an insignificant criminal history has a recommended Guidelines imprisonment range that is close to the statutory maximum.

Faulhaber is subject to enhancements for use of a computer and for the number and type of images that apply in virtually every case.  The Internet has become the typical means of obtaining child pornography, and Internet child pornography cases are essentially the only kind of child pornography crime prosecuted in federal court.  The enhancements for use of a computer and number of images lack value as a reliable proxy for culpability and are a poor gauge of relative levels of fault between offenders.  Because of the unfortunate ease with which large numbers of images can be accessed

and stored, most child pornography offenders are subject to enhancements from two to five levels for the number of images.

In this type of distribution scheme, the number of images does not provide the distinction between a large-scale and a small-scale child pornography purveyor that Congress and the Sentencing Commission must have envisioned when promulgating this market-based and quantity-driven scheme.   For example, in contrast to drug quantity in a drug-trafficking prosecution, where the amount of a drug a defendant possesses may have some correlation to his position in a distribution hierarchy, the number of images a defendant possesses is meaningless as an indicator of any position in a pornography distribution system.   The images can be endlessly replicated. Whatever connection there may be between a defendant's relative guilt and the number of images he possesses, an enhancement of two levels for possession of 10 to 150 images overstates that connection.   Moreover, the enhancement for number of images tops out at a five-level increase for more than 600 images.   In this court's experience, the number of images possessed or distributed usually measure in the thousands.   The number of images enhancement is not rationally connected to the conduct at issue.

The increased dangers and harms that make distribution a more serious crime than possession are accounted for in the statutory scheme by the mandatory minimum sentence provided in section 2252A, and need not be augmented by Guidelines enhancements that make any distinction between possession and distribution illusory. Punishing mere possession similarly to receipt and distribution has the potential to trivialize the distinction.

The court finds the Guidelines-recommended sentence of more than eight years for a fist-time offender with a relatively low number of images (based on the imposition of numerous and excessive enhancements for circumstances that appear in nearly every child pornography case such as use of the Internet, amassing numerous images, possessing images of prepubescent minors and violence, and some "distribution" of images in return for other images) is greater than necessary to protect the public and to deter Faulhaber from reoffending.  A sentence of 12 months and one day is appropriate to achieve the goals of sentencing in this case.  A year in jail is a significant term of imprisonment for an offender who has never been incarcerated at all.

The public will be adequately protected by the imposition of a five-year term of supervised release with strict conditions and by the provision of mental health treatment and sex offender treatment to Faulhaber.  The mere fact of the prosecution of these cases arguably deters others from engaging in this sort of conduct, but much of that market is driven by compulsive behavior that arguably will not be deterred in any event.  The deterrent effect of a lengthy sentence is further lessened by the international market for child exploitation offenses.  The court finds any additional deterrent value of a sentence longer than a year and a day would be marginal.  Further, to the extent that harsh punishment is necessary to deter harm to children, punishing a less-culpable offender as harshly as the worst does not satisfy the goals of sentencing and encourages disrespect for the law.

The court has also considered the need to avoid sentencing disparities.  The history of legislative enactments in this area reflects Congressional concern with the use of computers to lure or entice children into sex acts.  Possession of child pornography

16

was criminalized in part because of concerns that the Internet facilitated access to and enticement of minors for sexual exploitation, as well as concerns that pedophiles use the materials to desensitize and entice victims.   This case does not involve such conduct and there is no indication that Faulhaber is likely to engage in any such conduct.   Legislative history shows Congressional concern with dangerous child abusers and repeat offenders.   Faulhaber is neither.   The enhancements of increasing severity for quantity and for recidivism are designed to apply to the most dangerous of child pornography offenders and Faulhaber does not fall in that category.   There is no evidence that Faulhaber has ever abused, or is likely to abuse, children.   Faulhaber's lack of any criminal history and low risk of sexual violence suggests that a sentence of a year and a day, followed by five years of supervised release, is likely to afford adequate punishment and deterrence.

The court further finds that an outside-the-Guidelines sentence will respect the distinction between Faulhaber's culpability and the far greater culpability of a distributor or producer of child pornography or actual predator or abuser.   The sentence of a possessor of child pornography should be proportional to and significantly lower than a sentence for a distribution crime or exploitative crime that involves acts of abuse by a defendant.   Moreover, the court finds that a sentence of one year and a day is more proportional to other crimes than the lengthy Guidelines-recommended sentence would be.

Under the Guidelines scheme, a person who views child pornography on the Internet can receive a longer sentence than the actual perpetrators of child abuse and those who commit serious drug crimes, assaults and even murder.   This sentence is

relatively proportional to the median sentences for defendants who have engaged in more serious child sexual exploitation crimes such as production of child pornography, travel to engage in sexual conduct with a minor, or sexual abuse of minors.

DATED this 31st day of July, 2012.

BY THE COURT:


s/ Joseph F. Bataillon
United States District Judge